No. 2024-1189

---

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

VALEO NORTH AMERICA, INC.,
*Plaintiffs-Appellant,*

v.

UNITED STATES, ALERIS ROLLED PRODUCTS, INC., ARCONIC
CO., COMMONWEALTH ROLLED PRODUCTS INC., CONSTELLIUM
ROLLED PRODUCTS RAVENSWOOD, LLC, JUPITER ALUMINUM
CO., JW ALUMINUM COMPANY, NOVELIS CORPORATION,
ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET
TRADE ENFORCEMENT WORKING GROUP,
*Defendants-Appellees,*

---

On Appeal from the United States Court of International Trade,
No. 1:21-cv-001581, Chief Judge Mark A. Barnett.

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT
VALEO NORTH AMERICA, INC.**

---

Weronika Bukowski
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Phone: (212) 530-1930
wbukowski@crowell.com

Daniel Cannistra
Pierce Lee
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004

Darianne Young
CROWELL & MORING LLP
515 Flower St Flr 40
Los Angeles, CA
Phone: (213) 622-4750

# CERTIFICATE OF INTEREST

Counsel for Valeo North America, Inc. certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1.     **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Valeo North America, Inc.

2.     **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3.     **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Valeo Bayen
Valeo International Holding, BV

4.    **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

John Anwesen

5.    **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

No.

6.    **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

_/s/ Weronika Bukowski_

Weronika Bukowski

Dated:  May 17, 2024

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ..........................................................................1

SUMMARY OF THE ARGUMENT ........................................................1

ARGUMENT ................................................................................4

I.      Commerce Failed to Follow the Legal Framework for
        Scope Rulings ...................................................................4

        A.      Commerce Failed to Review the Scope Language
                as Interpreted by Its Trade Usage .......................................4

        B.      Commerce Did Not Conduct a Proper (K)(1)
                Analysis ...............................................................9

II.     Commerce's Analysis is Unreasonable and Convoluted..............17

III.    Valeo Appropriately Raised Arguments That
        Commerce Failed to Interpret the Term "Common"
        Before Commerce and the CIT ....................................................20

IV.     Valeo's Arguments Regarding the HTS Code are
        Proper..........................................................................22

V.      Valeo Broadly Challenged Commerce's
        Misinterpretation of the Relevance of Heat Treatment
        to the Scope of the Orders...........................................................23

VI.     Commerce Must Revoke Its Previous Customs
        Instructions.................................................................24

CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ArcelorMittal Stainless Belg. N.V. v. U.S.*,
  694 F.3d 82 (CAFC 2012) .................................................... 1, 4, 14, 18

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ........................................................... 14, 15

*Duferco Steel, Inc. v. United States*,
  296 F.3d 1087 (Fed. Cir. 2002) ............................................. 6

*Elm Grove Coal Co. v. DIR., O.W.C.P.*,
  480 F. 3d 278 (4th Cir. 2009) ................................................ 18

*Emp. Sols. Staffing Grp. II, L.L.C. v. Off. of Chief Admin.
  Hearing Officer*,
  833 F.3d 480 (5th Cir. 2016) ................................................ 15

*Intel Corp. v. Qualcomm Inc.*,
  21 F.4th 801 (Fed. Cir. 2021) ............................................... 23

*Long Island Care at Home, Ltd. v. Coke*,
  551 U.S. 158 (2007) ............................................................ 16

*Martin v. Occupational Safety & Health Review Comm'n*,
  499 U.S. 144 (1991) ............................................................ 15

*Mid Continent Nail Corp. v. United States*,
  725 F.3d 1295 (Fed. Cir. 2013) ............................................. 13, 14

*Morton v. Ruiz*,
  415 U.S. 199 (1974) ............................................................ 15

*Nat'l Elec. Mfrs. Ass'n v. United States*,
  654 F.3d 496 (4th Cir. 2011) ................................................ 18

*Novosteel SA v. United States*,
  284 F.3d 1261 (Fed. Cir. 2002) ............................................. 21

*Nucor Corp. v. United States,*
  927 F.3d 1243 (Fed. Cir. 2019) ................................................ 8, 17, 20

*Saha Thai Steel Pipe Public Co. Ltd. v. United States,*
  No. 22-2181 (Fed. Cir. May 15, 2024) ........................................ 5, 6, 11

*Star Pipe Products v. United States,*
  981 F.3d 1067 (Fed. Cir. 2020) ...................................................... 13, 14

*Sunpreme Inc. v. United States,*
  946 F.3d 1300 (Fed. Cir. 2020) .......................................................... 24

*Tai-Ao Aluminum (Taishan) Co., Ltd. v. United States,*
  983 F. 3d 487 (Fed. Cir. 2020) ............................................................ 14

*United Steel & Fasteners, Inc. v. United States,*
  947 F.3d 794 (Fed. Cir. 2020) ............................................................ 24

## Other Authorities

19 C.F.R. § 351.225 ............................................................ *passim*

*Antidumping Duty Order*, 84 Fed. Reg. 2,813 (Feb. 8, 2019) ................. 20

*Common Alloy Aluminum Sheet from China,*
  Inv. Nos. 701-TA-591 and 731-TA-1399, USITC Pub. 4861
  (Jan. 2019) ............................................................................................ 20

*Countervailing Duty Order*, 84 Fed. Reg. 2,157 (Feb. 6, 2019) ............. 20

# INTRODUCTION

On behalf of Plaintiff-Appellant Valeo North America, Inc. ("Appellant" or "Valeo"), we respectfully submit this reply brief in accordance with Federal Rule of Appellate Procedure 28, Federal Circuit Rule 28. This reply addresses the arguments by Defendant-Appellees the United States (the "Government") and the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members (the "Aluminum Association") in their response briefs (Docket Nos. 21, 27).

# SUMMARY OF THE ARGUMENT

This case centers around a foundational principle of administrative law: agencies must provide coherent, ascertainable guidance so that regulated parties may anticipate how agencies enforce their rules and regulations. This is the very reason why antidumping and countervailing orders include scope language, as "the primary purpose of an antidumping order is to place foreign exporters on notice of what merchandise is subject to duties." *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012).

Commerce's analysis in the Scope Redetermination[1] falls short of its obligations to the parties it regulates. The agency's Scope Redetermination, if sustained, would leave importers in the dark as to whether or not their products fall within the scope of an antidumping or countervailing duty order.

In the Scope Redetermination, Commerce failed to apply its well-established legal framework to determine if a particular producer is within the scope of an antidumping order. Scope determinations generally proceed in the following order: Initially, Commerce examines the relevant scope language. If the language is ambiguous, Commerce next interprets the scope with the aid of the sources set forth in the regulation, known as the "k(1)" factors. If those materials are dispositive, Commerce issues a final scope ruling, but if they are not dispositive, Commerce considers the factors stated in subsection (k)(2) of the regulation. 19 C.F.R. § 351.225(k).

Commerce did not follow this framework. Instead, it unlawfully disregarded public, discernable standards published prior to the issuance

---

[1] Unless otherwise indicated, the defined terms in this reply brief are the same as those appearing in Valeo's opening brief (Docket No. 15) ("Valeo Br.").

of the Orders (i.e., the Aluminum Association standards, commonly known as the "Teal Sheets") that are the dispositive k(0) source and miscast the Teal Sheets as a k(1) source. It then adopted a third party's confidential submission, unrelated to scope in a bid to interpret the scope language inconsistently with applicable industry standards. Moreover, Commerce placed this document on the record *three years* after Valeo filed its scope ruling request.

In so doing, Commerce adopted an unreasonable and tortured reading of the scope language in the Scope Redetermination. The Court need not, and should not, follow Commerce down the complicated rabbit hole that Commerce itself created. At the end of the day, the issue presented in this case is a simple one: whether the scope of the Orders applies to unregistered alloys. The Court only needs to look to the language of the scope itself in the context of trade usage to find the answer. It does not.

Defendant-Appellees unduly complicate the scope analysis by repeating the tortured interpretation of the scope language Commerce lays out in the Scope Redetermination. In their response briefs, Defendant-Appellees both offer a variety of arguments in support of the

Commerce's Scope Redetermination. For the reasons discussed below, these arguments do not meaningfully address the several fatal flaws in Commerce's Scope Redetermination.

## ARGUMENT

## I. Commerce Failed to Follow the Legal Framework for Scope Rulings

The underlying Scope Redetermination was contrary to law because Commerce failed to follow the requisite legal framework for scope rulings. Valeo Br. 21-23. Defendant-Appellees failed to meaningfully address the fact that Commerce did not follow this framework and instead assert that Commerce's analysis was wholesale reasonable.

## A. Commerce Failed to Review the Scope Language as Interpreted by Its Trade Usage

The Scope Redetermination is contrary to law because Commerce failed to conduct a k(0) analysis. As explained by this Court, Commerce must first examine the plain language of an antidumping duty order, determine if it is ambiguous, and define relevant terms based upon customary trade usage. *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82 (Fed. Cir. 2012). This is often referred to as a "k(0)" analysis. Valeo Br. 17.

Commerce unlawfully found that the scope was ambiguous by applying a disjointed interpretation of the scope language without regard to the scope language as a whole nor to context or trade usage. However, when viewed in the context of relevant trade usage, the scope of the Orders is unambiguous. Valeo Br. 25-26.

It is the Teal Sheets that are the definitional source that provides the proper trade usage of the terms found in the scope, because the Teal Sheets define the meaning of the scope term "as designated by the Aluminum Association." Thus, the scope language itself directs the reader to the Teal Sheets through this phrase. Valeo Br. 25.

The Government's brief continues to mischaracterize the Teal Sheets as a (k)(1) source. Gov. Br. 22. As such, the Government's entire analysis is flawed from a misappropriation of the Teal Sheets as a k(1) source. Likewise, the Aluminum Association largely side-steps this point and fails to address Valeo's arguments that the Teal Sheets are not a proper (k)(1) source. *See* Alum. Assn. Br. 31-34.

This Court's recent precedent supports Valeo's contention that the language of the scope and trade usage are given primacy when interpreting scope. *Saha Thai Steel Pipe Public Co. Ltd. v. United States,*

No. 22-2181, at 26 (Fed. Cir. May 15, 2024), Dkt. No. 42 ("There is only one framework which . . . *begins* with a review of the scope language *itself*") (citations omitted).[2] While this Court in *Saha* did not reach the issue of whether or not definitional sources should be reviewed before entering into a k(1) analysis, the Court makes clear that Commerce must first review the language of the scope, as a whole. *See id.* The scope language is the "cornerstone" of Commerce's analysis and "a predicate for the interpretative process." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002). Review of k(1) factors is unnecessary if the scope language itself answers the scope question. *Saha Thai Steel* at 27. Here, it does. Commerce cannot, as it did here, use k(1) sources to change the meaning of the scope language contrary to its terms. *Id* at 22 (quotations and citations omitted).

Read in conjunction with the Teal Sheets, the scope language itself defines the phrase "as designated." "As designated" means "as designated *by* the Aluminum Association." Valeo Br. 27. This phrase, taken as a whole, directs the reader to the Aluminum Association's

---

[2] This Court published *Saha Thai Steel Pipe Public Company Limited v. United States* after Valeo filed its opening brief.

specifications for designation: the Teal Sheets. As noted by the CIT in *Valeo I*: "as designated by the Aluminum Association" is a single phrase for interpretation. *See Valeo I* at 1335 ("The phrase '3XXX-series' is not defined in the scope except in reference to the phrase 'as designated by the Aluminum Association,'" and that "the latter phrase aids in the interpretation of the former"). Appx00008. Further, there is no dispute as to the interpretation of the Teal Sheets. Valeo Br. 27. All parties agree that the Teal Sheets, as a whole, support the interpretation that the scope of the Orders does not include unregistered alloys. *Id.*

The scope analysis should have ended here. There is no need to follow Commerce down the rabbit hole of its tortured and unreasonable analysis of the term "designate" in isolation. *See* Valeo Br. 28-33.

The Government's contention that "Valeo just disagrees with how Commerce weighed the *Teal Sheets*" is a misinterpretation of Valeo's arguments. Gov. Br. 22. Valeo's arguments do not target Commerce's weighing of the Teal Sheets. Rather, Valeo argues that the Scope Redetermination is contrary to law because Commerce failed to follow the proper steps, beginning with a k(0) analysis. Valeo Br. 21-26.

The Aluminum Association's contention that Valeo fails to address the CIT's conclusion that "{t}he possibility of drawing two inconsistent conclusions from the evidence does not preclude the agency's finding from being supported by substantial evidence" is similarly incorrect and misses the point. Alum. Assn. Br. at 34. Valeo argues, as it always has, that there is only one possible interpretation of the scope when read in context. An agency cannot rely on an interpretation that is not reasonable. *See Nucor Corp. v. United States*, 927 F.3d 1243, 1248-49 (Fed. Cir. 2019) ("{E}ven when a statutory term is sufficiently ambiguous or general so as not to resolve all questions about its meaning, an agency interpretation must still be a reasonable choice within the range permitted by the statutory words.") Here, Commerce's alternative interpretation is unreasonable and contrary to law for the reasons discussed at length in Valeo's opening brief. Valeo Br. 28-37.

Finally, the Government suggests Valeo's argument that "Commerce acted unlawfully by determining that the scope language is ambiguous . . . directly contradicts Valeo's other assertions that Commerce must determine whether a scope is ambiguous." Gov. Br. 18-19. This too misinterprets Valeo's arguments and suggests Commerce

8

has unlimited discretion when determining whether the language of a scope is unambiguous or not. It does not. Commerce's finding must be supported by substantial evidence and must not be otherwise contrary to law. Valeo is arguing just this, that Commerce and the CIT's finding that the language of the scope is ambiguous is unsupported by substantial evidence and contrary to law.

Even assuming, in the alternative, that the terms in the scope like "designate" or "3XXX-series" are ambiguous, the mechanism for resolving that ambiguity is not ambiguous because the scope language itself points to the relevant industry guidance, as discussed above. Valeo Br. 27-28.

## B. Commerce Did Not Conduct a Proper (K)(1) Analysis

The errors found in the Scope Redetermination do not end at the lack of a k(0) analysis. After finding that the language of the scope was ambiguous, Commerce's subsequent k(1) analysis was contrary to law because Commerce failed to identify <u>any</u> proper k(1) sources. *See* 19 C.F.R. § 351.225(k)(1). The types of sources Commerce may use in a k(1) analysis are limited. These include descriptions of the merchandise contained in (1) the petition, (2) the initial investigation, and

(3) determinations of Commerce (including prior scope determinations) and of the International Trade Commission.

### 1. The Teal Sheets are not a Proper K(1) Source

As discussed above, the Teal Sheets are a definitional source that aid in the interpretation of the scope language. The Teal Sheets would therefore not qualify as any of the three types of k(1) sources enumerated in Commerce's regulations.

Both Defendant-Appellees appear to miscast the Teal Sheets as a k(1) source to be weighed against other k(1) sources. These arguments must fail as they are contrary to law. This is evident in the Government's contention that Commerce did, in fact, consider the Teal Sheets as a whole. Gov. Br. 20. Even assuming this to be true, it does not address the issue which Valeo identifies; that Commerce must view the Teal Sheets as a whole *and* as a definitional source prior to determining whether the scope language is ambiguous.

### 2. The Alcha Separate Rate Determination is not a Proper K(1) Source

The Alcha Separate Rate Determination is also not a proper k(1) source. First, it does not contain descriptions of merchandise included from the petition or initial investigation. The determination itself does

not include any descriptions of merchandise at all. This leaves determinations as the only remaining k(1) source listed in 19 C.F.R. § 351.225. For the reasons stated below, the Separate Rate Determination is not an appropriate determination to be used as a k(1) factor and Commerce's use of it was thereby contrary to law.

At the outset, the Separate Rate Determination is wholly unrelated to scope interpretation–it is a response to a particular separate rate application of an unrelated third party. Valeo 35. A party may choose to submit or not submit a separate rate application for a number of reasons, but the inference that such an application and the resulting determination has any impact on the relevant scope is improper. Recently this Court rejected a parties' attempt to extrapolate the statement of a party in the underlying investigation as a k(1) source. *Saha Thai Steel* at 33 (rejecting arguments that a petitioner's partial withdrawal statement had relevance to scope interpretation). Here, Commerce is similarly inferring that a third party's decision to file a separate rate application, and the results thereof, has any bearing on the scope. This Court should similarly reject Commerce's reliance on

the Separate Rate Determination as it did in a similar situation in *Saha Thai Steel*.

The Government and the Aluminum Association argue that the premise of Valeo's arguments are incorrect because "{w}hile Commerce placed copies of the separate rate application on the record of the remand proceeding . . . Commerce relied on its determination with respect to the separate rate application as a (k)(1) source". Gov. Br. 26 & Alum. Assn. Br. 37 (quoting *Valeo II* at Appx00084). While it is true that Commerce did rely on its Separate Rate Determination, the critical fact Commerce relies on for the determination's use as a k(1) source is the numerical code of an alloy that is confidential. Valeo Br. 37-38. This information appears nowhere in the Separate Rate Determination; it is only found in the underlying third-party separate rate application. The Separate Rate Determination itself contains no discussion of the scope language nor the issue of unregistered alloys and designations. Valeo Br. 38. It is for this reason that Commerce placed Alcha's separate rate application on the record; otherwise, the Separate Rate Determination is meaningless. Since the Separate Rate Determination lacks any

discussion, analysis, or explanation about a scope issue, it is not an *interpretative* source.

Second, the Separate Rate Determination coupled with the underlying separate rate application relies on information that is not public and does not provides any clear, ascertainable standards as to the interpretation of the scope of the Orders. To find that the Separate Rate Determination is a determination that places importers on notice that their merchandise is subject to the Orders is therefore contrary to law. Defendant-Appellees argue that k(1) sources need not be public. Gov. Br. 27-30; Alum. Assn. Br. 39-41. In support of this argument, Defendant-Appellees distinguish *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) and *Star Pipe Products v. United States*, 981 F.3d 1067 (Fed. Cir. 2020) as inapplicable because these cases and their holding solely apply to mixed-media products. Defendant-Appellees' arguments are myopic and miss the point.

Regardless of the products at issue, the proposition that Commerce must use public source information in order to provide coherent and ascertainable standards applies generally. Valeo Br. 39. It is a foundational principle of administrative law that agencies provide

13

adequate guidance to regulated parties so that such parties may

anticipate how an agency enforces its rules and regulations. Valeo Br.

36-37. *See also Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142,

155-56 (2012) ("Agencies should provide regulated parties 'fair warning

of the conduct {a regulation} prohibits or requires.'"). It is for this

broader principle that Valeo relies on *Mid Continent* and *Star Pipe*,

which applies to all of Commerce's determinations regardless of the

particular product at issue. *See Tai-Ao Aluminum (Taishan) Co., Ltd. v.

United States*, 983 F. 3d 487 (Fed. Cir. 2020) (quoting *Mid Continent*,

725 F.3d at 495) (relying on *Mid Continent* in discussing "the broader

due-process principle that before an agency may enforce an order or

regulation by means of a penalty or monetary sanction, it must 'provide

regulated parties fair warning of the conduct {the order or regulation}

prohibits or requires'") (internal quotations and citations omitted).

Indeed, "the primary purpose of an antidumping order is to place

foreign exporters on notice of what merchandise is subject to duties."

*ArcelorMittal*, 694 F.3d at 88.

An importer could not possibly be on notice of what merchandise

is subject to duties based on the position of Defendant-Appellees; and

neither of the Defendant-Appellees address this issue. Allowing

Commerce to use the Separate Rate Determination relating to a third

party as a k(1) source would make it incredibly difficult to discern

whether or not a product is within the scope of an order in the future.

The Separate Rate Determination itself did not contain any information

related to the details of Alcha's product nor did it discuss the

applicability of the scope of the Orders. Therefore, an importer would be

unable to determine whether its product is within the scope of an order

based on publicly available information. Consequently, if there is a

separate rate determination on the record of a proceeding, importers

could be left in the dark as to what that separate rate determination

means for their products. *See* Valeo Br. 35-36.

The Administrative Procedure Act requires agencies "to avoid the

inherently arbitrary nature of unpublished *ad hoc* determinations,"

Valeo Br. 36-37 (quoting *Morton v. Ruiz*, 415 U.S. 199, 232 (1974)).

Furthermore, adequacy of notice to regulated parties is a relevant factor

when determining the reasonableness of the agency's interpretation.

*Christopher,* 567 U.S. at 156 (citing *Martin v. Occupational Safety &*

*Health Review Comm'n*, 499 U.S. 144, 158 (1991)); *Emp. Sols. Staffing*

*Grp. II, L.L.C. v. Off. of Chief Admin. Hearing Officer*, 833 F.3d 480, 488
(5th Cir. 2016) ("Fair notice requires that the agency have 'state{d} with
ascertainable certainty what is meant by the standards {it}' has
promulgated."). Courts have therefore deferred to interpretations that
do not create an "unfair surprise" for regulated parties. *Long Island
Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007) (deferring to
new interpretation that "create{d} no unfair surprise."). Commerce's use
of the Separate Rate Determination impermissibly puts regulated
parties in a position where they are unable to anticipate how Commerce
will interpret the scope language of an antidumping or countervailing
duty order.

At the end of the day, the Separate Rate Determination is a
document that Commerce placed on the record *three years* after the
scope ruling request was filed. It has no relevance as to the language of
the scope and improperly relies on third party confidential information.
Commerce's attempts to use this document as a singular trump card
after the CIT's Remand in *Valeo I* should not be accepted.

## II.    Commerce's Analysis is Unreasonable and Convoluted

Appellant's opening brief discusses several reasons why Commerce's interpretation of the term "designate" is unreasonable and contrary to law. Valeo Br. 27-33; *Nucor Corp. v. United States*, 927 F.3d 1243, 1248-49 (Fed. Cir. 2019). Defendant-Appellees fail to meaningfully respond to these arguments.

For instance, the Government argues that Commerce's conclusion that there is a general interpretation of the phrase "as designated by" was a reasonable alternative interpretation to the definition found in the Teal Sheets. Gov. Br. 21. This is factually incorrect. Commerce did not find that there is a general interpretation of the phrase "as designated by." Rather, Commerce found that "'designate' is a general term that may be used in the common vernacular." Appx00080. Commerce did not, and could not, find the same for the broader phrase "as designated by" without running afoul of *Valeo I*. The CIT reasoned that "as designated by the Aluminum Association" is a single phrase for interpretation. *See* Appx00008 ("The phrase '3XXX-series' is not defined in the scope except in reference to the phrase 'as designated by the

Aluminum Association,'" and that "the latter phrase aids in the interpretation of the former").

The Government's error highlights a critical point. Commerce interpreted the term "designate" in a void without the aid of the surrounding language or trade usage. Doing so cuts against the bulwark of caselaw on scope interpretation. *See ArcelorMittal*, 694 F.3d at 88; *Nat'l Elec. Mfrs. Ass'n v. United States*, 654 F.3d 496, 506 (4th Cir. 2011) (quoting *Elm Grove Coal Co. v. DIR., O.W.C.P.*, 480 F. 3d 278, 293 (4th Cir. 2009)) (The court "must not be guided by a single sentence or member of a sentence, but instead must look to the provisions of the whole law, and to its object and policy.").

The Aluminum Association, in its response brief, repeats Commerce's mischaracterization of the Teal Sheets. It argues that the Scope Redetermination reasonably "contrast{ed} the use of the term 'designation' in the Teal Sheets with the use of the term 'designate' in the scope definition." Alum. Assn. Br. at 33. This argument ignores that the Teal Sheets do not solely use the term "designation" in referring to its system of designating registered alloys. For example, the Teal Sheets state: "{t}his recommendation describes a four-digit numerical

system for *designating* wrought aluminum and wrought alloys." Valeo Br. 30 (quoting Appx00897).

Further, Commerce's alternate interpretation of the term "designate" falls into a yet another issue: it explicitly instructs the reader to <u>not</u> read the Teal Sheets as a whole. Commerce suggests that "designate" can be used in the common vernacular to mean identifying the "the location of the alloy series definitions." Appx00081-00082. Commerce reasoned that "the phrase 'as designated by the Aluminum Association' in the scope language, directs us to the location of the alloy series definitions where we could interpret . . . a 3XXX-series alloy as having a major alloying of manganese . . . ." Appx00081.

If Commerce were to expand on this reasoning it would run into a serious issue: the definitions of the alloy series are located in the Teal Sheets, and the Teal Sheets as a whole contemplate "the addition of three more digits to complete the four-digit designation" of the alloy. Valeo Br. 32. Therefore, Commerce's interpretation explicitly instructs the reader to look only at a portion of the Teal Sheets and ignore the rest of the document. Valeo Br. 31-32. This is because if the Teal Sheets are read as a whole the term "designate" would take on a different

meaning. Valeo Br. 10. As the CIT found in *Valeo I*, doing so is contrary to law. Appx00008-00009. *See also Nucor Corp*, at 1248-51.

In sum, the Court should not follow Commerce's unreasonable and convoluted alternative interpretation.

## III.   Valeo Appropriately Raised Arguments That Commerce Failed to Interpret the Term "Common" Before Commerce and the CIT

As argued in Appellant's opening brief, Commerce failed to appropriately interpret the term "common," which is embedded in the scope language. The scope of the Orders covers "aluminum *common* alloy sheet (*common* alloy sheet)." *Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 Fed. Reg. 2,813, 2,815 (Feb. 8, 2019); *Common Alloy Aluminum Sheet From the People's Republic of China: Countervailing Duty Order*, 84 Fed. Reg. 2,157, 2,158 (Feb. 6, 2019) (emphasis added).

The Government argues that Valeo did not preserve these arguments in its comments on the Remand Results. Gov. Br. 23. For avoidance of doubt, Valeo raised this issue in its 56.2 motion before the CIT and in its remand comments before Commerce. Appx00056, Appx00138. However, the Government argues that because this argument was not raised again

in the post-remand comments, it is not preserved for the purposes of appeal.

In *Valeo I*, the CIT set this particular issue outside of the scope of its remand and did not revisit it in *Valeo II*. The CIT stated in *Valeo I* that: "The court does not reach Valeo's arguments concerning the meaning of the term 'common' . . . Valeo's arguments implicate the meaning of the scope terms subject to the remand and thus, the court will defer resolution of them, to the extent they remain live, until Commerce issues its remand redetermination." Appx00010, Appx00016. In the Scope Redetermination, this issue remained live because Commerce continued to find that Valeo's T-series sheet was within the scope of the orders. However, the CIT did not address it in *Valeo II*.

Unlike in *Novosteel SA v. United States,* 284 F.3d 1261 (Fed. Cir. 2002), upon which the government relies, the trial court here had the opportunity to address the issue and in fact referenced this issue in *Valeo I*, but chose not to opine on it in *Valeo II*. Valeo should not be penalized for the issue's omission in *Valeo II*.

Moreover, Valeo's arguments on what is a "common alloy aluminum" is embedded in Valeo's other arguments. This entire dispute centers

around whether or not registered aluminum and aluminum alloys are within the scope of these Orders, and thereby whether then are considered "common" or and known to the industry.

## IV.    Valeo's Arguments Regarding the HTS Code are Proper

Even if the Teal Sheets on their face are not enough to be considered a dispositive definitional source, there are other industry-specific and statutory definitional sources that Commerce ignored, e.g., note 6 to Chapter 76 of the Harmonized Tariff Schedule of the United States. Valeo Br. 31. The Aluminum Association contends that this argument is incorrect because note 6 to Chapter 76 was not included in the HTS code when Commerce initiated its investigation preceding the Orders in 2017. Alum. Assn. Br. 34.

However, Defendant-Appellee's point only reinforces Valeo's argument that unregistered alloys are outside of the scope of the Orders. Omitted from the Aluminum Association's argument is a discussion of *why* the HTS code was amended about five months after Commerce published the Orders. This new statistical note was created to approve a group of products that met the scope definition of the Orders, i.e., registered alloys.

Defendant-Appellee cannot ignore the existence of the differentiation between registered and unregistered alloys in the HTS code immediately following the publication of the scope of the Orders. This amendment is not devoid of meaning – it was a direct result of the publication of the Orders so that Customs would be able to enforce what alloys fall within the scope and which do not (i.e., unregistered v. registered alloys). *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.").

## V.    Valeo Broadly Challenged Commerce's Misinterpretation of the Relevance of Heat Treatment to the Scope of the Orders

Defendant-Appellees argue that Valeo did not challenge Commerce's definition of heat treatment found in the Scope Redetermination. Gov. Br. 33; Alum. Assn. Br. 45-46.

In its opening brief, Valeo discusses how Commerce's reasoning is broadly flawed and unsupported by substantial evidence. Valeo Br. 43-45. The Scope Redetermination's analysis of heat treatment is unsupported by substantial evidence because Commerce makes two contradictory findings in support of its conclusion. Commerce used the

CIT's finding in *Valeo I* for support that a registered 3XXX-series alloy (selected for comparison to the core layer of T-series sheet) is non-heat-treatable. Appx00075. However, Commerce then made a contradictory finding that the record does not "indicate that the scope excludes heat-treatable sheet." Appx00078. As discussed in further detail in Valeo's opening brief, this statement misstates the relevant issue in this proceeding and is factually in correct. Valeo Br. 45.

## VI.  **Commerce Must Revoke Its Previous Customs Instructions**

Defendant-Appellees incorrectly argue that Valeo's opening brief identifies no authority that *Valeo I* invalidates Commerce's prior suspension of liquidation. Gov. Br. 36-37; Alum. Assn. 47-48. As discussed in Valeo's opening brief, under 19 C.F.R. § 351.225(e), Commerce may only issue Customs instructions once a scope inquiry has been initiated. This Court has confirmed that the regulations do not allow suspension of liquidation before the initiation of a scope inquiry. *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 801 (Fed. Cir. 2020); *see also Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020). In light of this, Commerce must amend its instructions to Customs because, as of today, Commerce's suspension of liquidation instructions

extend well before the date of the initiation of the scope inquiry, *i.e.*, February 15, 2023.

The Aluminum Association also argues that the suspension of liquidation should also remain in effect because *Valeo I*, a remand order, is not a final, appealable, adjudication. Alum. Assn. Br. 48. This argument is also of no avail. The regulations are clear that Commerce may only issue Customs instructions when a scope inquiry has been initiated. 19 C.F.R. § 351.225(e). Therefore, Commerce's initial instructions to Commerce were in error because they were based on an unlawful final scope ruling. Whether or not the remand order of the CIT is final is not relevant. The status quo is that the current suspension of liquidation of entries is contrary to law and impermissibly extends prior to Commerce's initiation of a scope inquiry. This must be cured.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court reverse the judgment of the Court of International Trade

and vacate as unlawful Commerce's scope ruling that Valeo's T-series aluminum sheet is covered by the scope of the Orders.

/s/ Weronika Bukowski
Dan Cannistra
Pierce Lee
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595

Weronika Bukowski
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Phone: (212) 530-1930
wbukowski@crowell.com

Darianne Young
CROWELL & MORING LLP
515 Flower St Flr 40
Los Angeles, CA
Phone: (213) 622-4750

*Counsel for Valeo North America Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation contained in Fed. R. App. P. 32(a)(7) because, excluding the portions exempted by Rule 32(f), this brief contains 4,892 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

*/s/ Weronika Bukowski*
Weronika Bukowski

## CERTIFICATE OF SERVICE

I certify that on May 17, 2024, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Federal Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Weronika Bukowski*
Weronika Bukowski